Our next case of the afternoon is 410050, Steidinger v. Daugherty & Hall, for the appellant Mr. Bailey, for the athlete Mr. Armstrong. You may proceed. Thank you, Your Honor. May it please the Court. My name is Don Bailey. I represent the Steininger family in the estate of Travis Steininger. This case is here because the trial court dismissed eight counts that I filed on behalf of the Steiningers and against two police officers. The short version of what happened was there was a party of underage drinkers out in rural Forrest, Illinois, on the 27th of February, 2007. There were at least 50 kids there. It was hosted by J.T. Zimmerman, and he's a mind, going to high school. His brother, John Zimmerman, is a police officer. John Zimmerman knew about the party several weeks before it took place. He even went out to the party about 9 o'clock. During the evening and later hours that night, he had several phone conversations with Officer Daugherty, who was on duty that night. Officer Zimmerman, who wasn't on duty, went to the party earlier, had left at 9 o'clock, came back about 2.30 in the morning. About the same time as Officer Zimmerman, who again is off duty, came to the party, Officer Daugherty pulls up. Officer Daugherty's on duty. Officer Daugherty states that he saw some people darting the house. Now Officer Daugherty at this point already knew a party was going on. He'd been told. He'd been by it. He'd seen the cars there. He sees these people darting the house, so he decides he's going to go investigate. He walks up to the house, has some conversations with John Zimmerman, the off-duty police officer, and J.T. Zimmerman, the host of the party. While they're talking, they walk into the house, into the mudroom, the antechamber. As they did that, kids run out the basement or lower floor of the house, run out into the night. As I said, it's February 28th. It's 6 below zero. The officer then apparently steps out, yells at the kids to come back. Walks in. Travis Zimmerman is one of the kids that took off running. Once he comes back in, because he's seen the kids run, he tells Officer Zimmerman to get all those kids back in here. And don't let them leave. If they leave, I'm going to write tickets. Then Officer Daugherty leaves the scene. Well, in the meantime, Travis Steininger continues to run. Ultimately, he succumbed to the weather and passed away that night. He was found approximately 10 o'clock the next morning. In the meantime, John Zimmerman and J.T. Zimmerman and Officer Daugherty did nothing to attempt to get him to return to the party or do anything to secure his health and safety. Now, we filed a complaint. We're now on our fourth amended complaint. Counts 1 and 3 are against Officer Daugherty. We allege a special duty allegation. Those were dismissed by the trial court. Counts 2 and 4, again against Officer Daugherty. We allege willful and wanton conduct under the Immunity Act. Again, dismissed by the trial court. Counts 9 and 10, filed against Officer Zimmerman, alleging willful and wanton conduct under the Immunity Act. And then Counts 11 and 12, against both officers. Simple negligence counts, alleging that they should be responsible as a result of their negligent actions. Now, the court dismissed all those counts, and those are all the counts against Officers Daugherty and Officer Zimmerman, pursuant to a motion by the defendant under Sections 2-615, or Insufficient Law, and 2-619, barred by the Immunity Statute. The trial court found, at least in his written work, that the facts as I've described them in the brief do not sufficiently allege willful and wanton conduct. That there's no control, and control is one of the factors in determining whether a special duty arises. And he dismissed the negligence counts because it says there's no duty alleged against the officers. Now, I want to define some terms. I'm sure you know, but the terms we're going to talk about are the Public Duty Rule. The Public Duty Rule is a court-adopted rule that says that municipalities and their employees cannot be sued and tort for failure to provide police or fire protection. There's an exception to that general rule, and that's the Special Duty Exception to the Public Duty Rule. That exception says that there's a certain class of persons that shouldn't be denied their day in court under the Public Duty Rule because they're in a special class. And there's four factors that determine whether you qualify under the Special Duty Exception to the Public Duty Rule. The first factor is that the employer or the municipality has unique knowledge of the situation for the plaintiff. There are specific acts or omissions by the, in this case, officer, that the acts or omissions are willful and the officer had control. The other term I'd like to just briefly outline is the term Willful Unwanted Conduct, and I'm being sure that you're aware of what that is, but it's defined in the Tort Immunity Act and defined in cases in part as utter indifference or a conscious disregard for the safety of others. And I think really that's what we have here. Generally speaking, there is no sovereign immunity in the state of Illinois. You can sue the municipalities and employees thereof for any tort as anyone else, unless it comes under the Public Duty Rule or the Tort Immunity Act. Now, the first counts being, I say first, counts one and three that I filed against Officer Dougherty are filed under the Special Duty Exception to the Public Duty Rule. It's hard to explain. The Supreme Court has not ruled on whether or not Public Duty Rule even existed since we have the Tort Immunity Act. So, I filed counts one and three alleging the special duties. Now, the defense says, well, there's no special duty because you don't qualify. And they said, we don't qualify because the officers had no knowledge of the circumstances that Travis was under. And I don't believe the trial court ruled on this issue, but I think it's clear that the police officers knew the danger, knew the unique circumstances to which Travis had been, well, eventually succumbed to because they watched him run out in the cold. They'd been in the murder room where all the shoes were. They watched people run out. They didn't have coats. They didn't have shoes. They flashed their flashlights out there and said it looked like a bunch of deer were running out there. But they knew what they had done. And in addition, Officer Dougherty told Zimmerman, get him back in. Well, why did he get him back in? Because it's cold and dangerous running out in the middle of the night when it's six below zero. He understood the unique circumstances to which Travis was being placed in. Did they owe a special duty to each person who left the house? I believe so. How do they know how many people leave the house? Well, you follow the tracks. Nothing else. Because there was snow. They didn't even attempt to do anything. Understood. Wouldn't it be true that the cases, at least some of the cases that have looked at this special duty exception, distinguish groups from a specific individual and specific risk of harm? Well, I wouldn't say distinguish groups. I know some of the cases, the school cases that they present like Lawson, it's a group, yes. But the entire group is not, they don't know who is going to have the risk of harm. In this case, they knew everybody that ran out had the risk of harm. And they knew exactly what their risk of harm was. The school cases like Lawson, it's a gun, somebody brings a gun to school and there's a risk to everybody at school. Well, only if you don't know which person or persons have the risk of being injured by that gun. And I think that's a difference. But in this particular case, they knew the risk to everybody that ran out. They attempted to make no effort. And they knew how cold it was. They knew they were out of the country. Besides the unique knowledge, the other area in which the defense argues for the special duty rule to not apply would be the control issue. And there are a lot of cases on the control issue. It's a difficult area. When we're looking at cases, the two we argue the most in briefs and previous arguments are Doe and DeSmet. DeSmet is a case where a car had run off into a ditch. Someone saw it, they called in and reported it to the police. No one ever went out to investigate it. Nothing was ever done. The case was filed for failure to provide those police services to go out and check on that car that was in the ditch. The court found that the special duty did not apply in that particular case. There was no control. In Doe, it was a case where a mother and child were at home. A man, an intruder, came into the house, threatened the mother. The mother eventually escaped. Two children were left there with the intruder. She called the police. The police came. The intruder was in with the two children. One of the officers prevented other officers from going in to get the intruder. During that period of time, the children were sexually assaulted by the intruder. In that case, the Supreme Court held that there was sufficient control. They didn't actually control the kids that were inside. They didn't actually control the intruder. They controlled what was going on outside. They prevented other people from going and saving these two kids. I would submit that's really what we've got here. We've got the officer telling the off-duty officer and the host of the party to not let anybody leave because they're going to be arrested. They can't even go out and look for Travis. There were people who knew Travis was not back. They didn't know where he was. They didn't want to go find him. They were prevented from doing so by the police officer with his authority telling the other police officer and the host of the party that nobody leaves. If you come back in here, nobody leaves. Always, you tip until they leave. The crux of the whole case is that control issue. The control issue not only comes up on the specialty duty exception. The control also comes up when you're analyzing the Tort Immunity Act. I'd like to go back to the Lawson case. As you point out, you have a group of kids. Somebody has a gun. There's a risk to everybody there. There's a group. There's a risk to everybody at school who could be injured by that gun. There's no way to tell who has the gun. There's no way to tell if it's going to be used. There's no way to tell who's going to be injured. In this case, there's no way to know who left and who didn't. There's no way to know who had shoes and who didn't. There's no way to know who was intoxicated and who didn't, who wasn't. There's no way to know who had clothing and who didn't. There's no way to know whether there's a car parked on the next side road. I understand that's all. That's partly what you're confronted with when you want to compare it to the gun case. But you did know you were running out in six below degree weather. You did know that. You knew the danger. And it was for everybody. Getting back to that point, when you're talking about control, you don't know the specific individual. I don't think that's exactly the test. I think if you look at Doe versus Calumet, they really look at what caused, what precipitated the situation. What caused the action? And I've got the case open on page 504. This case, this court has interpreted the control element to require that the public employee initiates the circumstances which create the dangerous situation. Now, there are cases cited that you have to have direct control, you have to basically know the injured party. But that's not what the court says here. The public employee initiated the circumstances which created the dangerous situation. That's what we have. We have a public employee, a police officer, who, I'd say, chases off. He knew. It happens all the time. We read about cases all the time where kids at underage drinking parties see a police officer and they take off running. He knew when he walked up there that's a possibility. He knew when they ran that they were in danger. He controlled the scene. He yelled at him to come back. He told Officer Doherty to get him back. And they told him not to leave. He controlled the scene. He controlled the situation that ultimately caused the death and travel. Now, there are a lot of cases... So if this was on an island out at Lincoln Lakes and the conservation police and the sheriff's police, and a sheriff's policeman went over there in a motorboat, and people left the island on canoes and boats and swimming, the authorities would be responsible for the well-being of each person who left the island because they were attempting to escape simply the show of authority of the police? Well, if they just scared them away, and if you assume that being in a boat or swimming is dangerous... Well, if you're intoxicated it is, but if you've been at a party... I guess so. I think you have a duty to try and collect those people and make them safe, put them in a safe situation. And I think that's kind of the rule that was outlined in the Fentango case. In that case, there's a domestic dispute, husband and wife, police come, tell the husband to leave. The husband's intoxicated. He leaves. He's in a car accident. People that had nothing to do with the domestic dispute get injured, and they're the plaintiffs. Control was found in that case. That's a tort immunity case, but there's still control. Of course, they had direct control of him. They could have kept him at the scene, they could have arrested him, they could have given him a ride somewhere, they could have taken away his car keys, but instead they just let him depart. Which, yeah, that's what happened. Getting to the Tort Immunity Act then, the question then is whether 4-104 applies. It says basically what the public duty rule is, that you can't sue a municipality or employees as a result of failure to provide police protection. Versus 2-202, which says that if you're enforcing the law, that you are immune unless your contact is willful and wanton. I'd submit that 2-202 applies here. Again, the courts use this control analysis to decide whether it's 2-202 or 4-104. Finally, we filed two counts against Officer Zimmerman, the willful and wanton counts. We believe that once he was assigned the job of getting him back, as a police officer he had a duty to do that, that he was then enforcing the law, that by failing to do that, we should be able to pursue our counts of willful and wanton conduct. And again, we believe that this conduct by the police officers is willful and wanton conduct. The final thing that I want to talk about is the last two counts that I filed. They're simple negligence counts. I'm saying that these aren't police officers, let's just assume it's me. I put on police uniform, I go out there, my idea when I walk out there is that I'm going to scare these kids. When I go out there and those kids take off running, I believe that you had a duty not to do that, but once you did, and someone has approximately caused injury as a result of that action, that you should be able to be sued under a simple negligence count. Thank you, counsel. We'll hear from you in a moment. Mr. Armstrong? Thank you, your honors. May it please the court. My name is Brian Armstrong. I represent the defendants, the appellees in this case, Officer Doherty, Officer Zimmerman. With respect to the public duty rule that counsel discussed, and the special duty exception to that, even if that rule still is viable, it doesn't apply here, because the plaintiff didn't leave facts sufficient to fall within the special duty exception. Mr. Bailey alluded to it, and the cases are pretty clear. The Thames case and the Lawson case that your honor has already raised, at least factually, are very clear that the defendant needs to have actual knowledge of the particular risk to the particular victim. The law is clear. That's a very narrow definition. In this case, there aren't any facts that meet that definition. The facts that would have needed to be fled would have been that the officers knew that Travis himself was one of the people that fled. They would have had to plead that Travis knew, that they knew that Travis was not wearing appropriate clothing for the weather. And they would have had to have pled that the officers knew that Travis hadn't returned to the house or to some other safe place when they saw all the other kids returning to the house. So they clearly don't meet that first requirement. What if it's a smaller party, and they don't know him by name, but they see an underage male with red hair and no shirt and no shoes jump out a window? Well, in that case... It's something that he sees, but a smaller group, so that person might be identifiable later on. Well, if that plaintiff filed the same type of cause of action, the gravamen of which, in this case, is failure to assist or failure to rescue, then the immunity of 4102 applies, and there still is no liability. So it shifts the analysis from duty to immunity. I still don't think there would be a duty there, but even if there was, the immunity would apply. Which gets me to another section. The other issue that the plaintiff's complaint fails to sufficiently please Mr. Bailey was the control issue. In order to apply the special duty rule, the plaintiff needs to allege facts sufficient to establish that the defendant had control. Here, the facts are alleged that a group of kids ran from the house, and that the officer yelled at the kids. And critically here, the facts also allege in paragraphs 34 and 36 that the officer saw the kids returning to the house. Mr. Bailey didn't mention that, but I think that's an important fact here, because that gets into the fact that certainly he wouldn't have a duty to go out and look for somebody to see if all of the kids were returning to the house, which is what Mr. Bailey suggested. That certainly wouldn't, that would go much beyond that. The facts where control are established. The most heavily cited one, as counsel represented, was the Doe case. And that case has repeatedly been distinguished on its particularly egregious facts. Both the Supreme Court and Doe and the other appellate courts have repeatedly said that that case is limited to its facts. And the facts there, if you look at them, are nowhere near the facts that are pled in this case. In Doe, the officer knew that the kids in the house were in danger, and that there was a criminal in the house who was likely to harm them. The mother of the kids was begging and pleading for the officer to break down the door to rescue the kids. The officer said, I don't want to incur the cost of breaking down the door. The officer caused the other officers to actually physically restrain the mother of the kids from going into the house. That's not what we have here. We don't have anything like that here. Now, counsel indicates that he thinks that the officers prevented the kids from going out and searching for Travis.  In fact, and again, this brings me back to the other fact, the fact that Mr. Berry left out in his complaint, the officer saw the kids returning to the house. He would have no reason to believe that somebody would have to go out and look for the kids. So the Doe case is clearly distinguishable, and it doesn't apply here. Very specifically, did he allege that one or both officers prevented individuals in the house, or individuals who returned from the house, from leaving again so that they could search? I do believe he does allege that at one point, Officer Dougherty instructed either J.T. Zimmerman or John Zimmerman that if kids leave the house, he will issue them tickets. Right, but is there an indication that Dougherty remains then to watch and see if anybody leaves the house? No. Nothing similar to that is pled. And again, we're at the motion to dismiss stage, so we're only dealing with what's pled. That's not pled at all. And think about, in Dougherty's mind, he sees the kids returning to the house. So in essence, what he's likely telling Zimmerman is, if there are kids drinking here, I'm going to pull them over for DUI. He's not saying you can't go out and search for Travis who's missing, because he doesn't know Travis is missing. For all he knows, Travis is one of the kids coming back to the house. The issue about initiating the harm. If you look at the cases, those cases are cases where the police officer initiated the harm because the officer already had the victim under control. There's a case, I can't remember if it's the owning case or another case, but one of the cases that discusses this, is where the officer had a car pulled over and instructed the driver of the car to get out of the car, and come behind the car, and then there was a collision. That officer already had control over that victim, and the act of ordering the person to get out of the car was the action that initiated the harm. So I would disagree with Mr. Bailey's interpretation of those cases, because really the issue is control, and DeSmet makes clear that the issue is control, not initiating the circumstances. Now, aside from special duty, whether a plaintiff is pledged to establish a special duty, there's also the immunity issue. And the immunity, assuming that, if we assume that a plaintiff pledged a special duty, the Immunity, the Tort Immunity Act applies, and that Tort Immunity Act also applies to plaintiff's counts of willful and wanton conduct. So I'll address those together. Section 4-102 is the section that applies here. That's the section that provides no liability for failure to provide police protection or inadequate police protection. Importantly, the cases have indicated that failure to rescue, failure to search, or even a police officer failing to assist somebody, is within the immunity provided by Section 4-102. That's really what we have here. And I think Mr. Bailey even said in his argument that the issue of the case is, or the government of the case is, that, in fact, I'll quote him, that the defense failed to rescue, or failed to assist the traffickers. That's exactly what the case of, say, 4-102 applies to. The Platasys case is a case that I cited, which is very factually similar. In that case, we had an automobile that was pulled over. A passenger in the car was ordered out of the car. The case indicates that the passenger was intoxicated, looked as though she had been injured, and the case is very clear that she was not wearing clothing that was appropriate for the cold weather that night. The officer goes back to his car, and she fled. So now we have a situation where the officer actually has actual knowledge that this victim fled in the cold, in the middle of the night, had been intoxicated, and wasn't wearing appropriate clothing. And the court found that 4-102 immunized, provided immunity for the defendant in that case as well. Those facts are even worse than the facts that are fled here. So if the defendant in that case enjoys immunity, certainly the defendants in this case must enjoy it. The other reason that 4-102 applies over Section 2-202 is, again, the actual knowledge and the control issue. The DeSmet case tells us that the analysis in determining which of those two sections applies really is the same analysis as the Special Duty rule. And for the same reasons I articulated earlier, plaintiffs have an alleged actual knowledge of the danger to Travis, and have an alleged control. So the trial court probably applied 4-102 in this case rather than Section 2-202. Now, even if Section 2-202 did apply in this case, the facts don't rise to the level of willful unwanted conduct. What we have is police officers who saw kids run, and then saw the kids come back. And then, assuming the facts is true, they didn't do anything more. That's not willful unwanted conduct. Especially given that... Could you keep your voice up a little bit? Sure, sorry. That's not willful unwanted conduct. Especially given the fact that the officers didn't have any reason to know that Travis was out there, and didn't have any reason to know that he wasn't appropriately clothed for the weather. And the other thing that's important, the cases that I rely on, the DeSmet case, the Anthony case, and the Ware case, those are all cases that were decided on a motion to dismiss. And in fact, the Anthony case, the appellate court reversed the denial of a motion to dismiss. Because the court found that 4102 applied, rather than section 2-202. So, counsel hasn't made that argument here. He's made it in his briefs that it should just go to the jury. Well, those cases say otherwise. As for officers, the counsel alleged against Officer Zimmerman, plaintiff alleges that Officer Zimmerman was not on duty, and was not engaged in any police function. So, he couldn't have owed any duty under those circumstances. The plaintiff then tries to kind of back into pleading some type of duty, police duty, by alleging that at some point, Zimmerman agreed to get the kids back in the house. Well, again, that brings us back to section 4-102, because what he's suggesting is that he agreed to assist, or rescue, or search for Travis, which really is 4102. Plaintiff also claims that the employee manual that applies to Officer Zimmerman provided a duty. The case law is clear that an employee manual does not establish a duty to third parties. It may establish a duty between the employer and the employee, but not third parties. So, that doesn't provide a source of a duty to a plaintiff either. Again, 4102 would apply to the counts that are directed against Zimmerman, because, again, the allegations are that he failed to search for Travis, failed to rescue Travis, failed to take any inadequate police services, and the cases tell us that that is subject to section 4-102. The last counts, the simple negligence counts, those counts don't state a duty either. To state a duty, you have to establish reasonable foreseeability of the actions. And that's an objective standard, and we're required to examine what was apparent to the defendants at the time of the events. We can't look at what they did in hindsight. At the time of the events, it's certainly not reasonably foreseeable to believe that someone would flee in minus 6 degree weather, not wearing shoes, not wearing a coat, and that he or she wouldn't return to the place where she fled from, or some other place where he or she would be safe from the cold. It's simply not reasonable to expect that somebody would allow themselves to be subject to that cold for that period of time, such that it would result in their death. It's especially not foreseeable in this case, given the defendant's allegations that the defendants saw the kids returning to the house. And again, examining what the defendants knew at the time of the actions, since the defendants saw that the kids were returning to the house, it's not reasonably foreseeable to see that, or not sufficiently reasonably foreseeable that they would be harmed, such that the duty applies. With respect to causation, the Nelson case and the Kimber case that I cite, state that where someone flees the police and they are harmed as a result of that, there is no proximate cause on the part of the police officers. That's the person fleeing the police, they made their own decisions, and the proximate cause of the harm is their actions and their decisions. In sum, what we have here is a case where plaintiffs are alleging that the defendants failed to assist the plaintiff. They haven't stated a duty. If they have stated a duty, it's subject to the immunity. And really, the big picture here is looking at the policy. The legislature and the courts are clear that it's the policy in Illinois that police officers are not the insurers of public safety. Basically, that's what the plaintiffs are asking for. They're asking for the sheriff's to be the insurers of Travis' safety. And the case law and the policy in Illinois doesn't allow for that. So for those reasons, the trial court's dismissal is proper and should be affirmed. Thank you. Thank you, counsel. Mr. Bailey? First thing I'd like to address is that I don't believe anywhere in my complaint I alleged that any of the kids came back. I don't think that's in the record anywhere at this stage of the proceedings. And I think if you look at the complaint, and we have taken the complaint as it's fled, and reasonable inferences thereof, they can't make any argument concerning what the other kids did because there's no allegation concerning what the other kids did. The only allegation is that Travis did not return, and that he succumbed to the weather. The Placetius case is a case cited by counsel where there was an automobile stopped, and one of the passengers walked away. And again, succumbed to the weather. The court did not find that there was any willful wrong conduct. It did find that tortimony in the act applied. In that case, the allegations were that they failed to adequately search for her. Because in that case, the police did search for her. They knew that she was reported missing. They searched for her and didn't find her. Now that's a different case than the one we have here. The police did take action to find her. That's not what we have. And that's why in that case, I don't have any problem saying that the Immunity Act does apply because the police made the effort. And they did. You cannot file a suit for inadequate police protection. We're not here saying there was inadequate police protection. We're here saying you chased him away. You should have made an effort to go get him. You should have helped protect him. You didn't do that. You caused the injury. That's the difference between our case and that case. And again, looking at the overall picture, is this really the situation where we want police officers to have immunity? You want police officers to be able to engage in this conduct, chase kids away, and then walk away? You know they're in danger. I don't think the courts or the legislature had in mind this situation where immunity should apply. This is an outlandish case. It's like the Doe case. In that particular case, the officers that were outside, they didn't know that this guy inside was going to sexually assault those kids. They didn't know that. They just knew he was an intruder. Again, I quote in the brief, because I think it really applies here. There's a quote in two of the cases, and I don't have it written out word for word, but basically it says, the law protects those that are thrown into a den of snakes, but not voluntary snake chargers. This kid was thrown in a den of snakes. And they knew they were going to run, and they ran, and they did nothing to bring him back. Again, we're asking the court to overturn the trial court's determination in this case. We think the trial court was clearly of error. We'd ask that you consider that, and we feel that when you consider all the facts and look at it specifically, and I didn't get a chance to talk about Keener, but I wrote the Keener case, the Doe case, and Tango, I think that you'll see that really this is a case that cries out for being able to proceed, not getting stopped at the pleading level, and letting a jury decide what willful wrong conduct is. Thank you. Thank you, counsel. I take the matter under advisory.